UNITED STATES DISTRICT COURT
MIDDLE DISTRCT OF FLORIDA
OCALA DIVISION

NEVARE ZIMMERMAN,

    Plaintiff,

CASE NO.:
5:18-CV-570 OC30PRL

v.

NAVIENT SOLUTIONS, LLC,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, NEVARE ZIMMERMAN, by and through the undersigned counsel, and sues Defendant, NAVIENT SOLUTIONS, LLC, (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

### JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. The alleged violations described herein occurred in Lake County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida residing in Montverde, Lake County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, NAVIENT SOLUTIONS, LLC, is a Delaware corporation with a principal place of business and/or office for transacting its business located at 2001 Edmund Halley Drive, Reston, Virginia 20191 and conducts business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301-2525.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

16. Defendant called Plaintiff approximately six hundred (600) times in an attempt to collect on an alleged debt related to a student loan.

17. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that her knew it was an autodialer because of the vast number of calls she received and because she heard an extended pause when she answered her phone before a representative would come on the line.

18. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (352) ***-1191 and was the called party and recipient of Defendant's calls.

19. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone number (352) ***-1191 and her work telephone number, (847) ***-9311 in an attempt to collect on a student loan.

20. Further, Defendant also placed a substantial number of calls to Plaintiff's grandmother, Plaintiff's mother, and Plaintiff's neighbors in an effort to harass and intimidate Plaintiff into paying.

21. On several occasions over the year, Plaintiff instructed Defendant's agent(s) to stop calling her, including on her cellular telephone.

22. In or about March of 2018, Plaintiff began receiving calls to her aforementioned cellular telephone number from Defendant seeking to recover an alleged debt.

23. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number(s): (866) 989-1679; (513) 914-4615; (703) 935-1150; (765) 637-0790, and; (866) 517-3093; and when those numbers are called, an automated message answers "Thank you for calling Navient. This call may be monitored and/or recorded for quality purposes."

24. Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

25. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

26. A few weeks after the automated calls from Defendant began, in or about March of 2018, Plaintiff answered a call from Defendant, was met with an extended pause, held the line, was eventually connected to an agent/representative of Defendant, explained to the agent/representative that she was aware of her obligations, the incessant calls to her cell phone, work phone, and family members were harassing, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

27. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

28. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and/or willful.

29. Similarly, in or about June of 2018, due to the continued automated calls, Plaintiff answered a call from Defendant, was met with an extended pause, held the line, was eventually connected to an agent/representative of Defendant, explained to the agent/representative that she had previously requested Defendant stop calling her, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

30. Additionally, on or about August 9, 2018, due to continued automated calls to her aforementioned cellular telephone number from the Defendant, Plaintiff answered a call from Defendant, was eventually connected to a live agent/representative of Defendant that identified herself as "Ebony Jones", and informed "Ebony Jones" that she had previously asked Defendant to stop calling her cellular telephone number, that she would take legal action if the calls continued, and again demanded that Defendant cease placing calls to all numbers associated with her account.

31. Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number on numerous occasions.

32. On at least five (5) separate occasions, Plaintiff has answered a call from Defendant regarding her account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

33. Each of the Plaintiff's requests for the harassment to end were ignored.

34. From about March of 2018 through the filing of this Complaint, Defendant has placed approximately six hundred (600) actionable calls to Plaintiff's aforementioned cellular telephone number (or as will be determined upon a thorough examination of Plaintiff's wireless records and/or Defendant's records).

35. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

36. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

37. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

38. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the

Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

41. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

42. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, and aggravation.

43. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

44. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

45. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

...

46. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

47. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

48. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

49. Defendant violated the TCPA with respect to the Plaintiff.

50. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

51. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

## COUNT I
### (Violation of the TCPA)

52. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-one (51) as if fully set forth herein.

53. NAVIENT SOLUTIONS, LLC willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified NAVIENT SOLUTIONS, LLC that Plaintiff wished for the calls to stop

54. NAVIENT SOLUTIONS, LLC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing

system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against NAVIENT SOLUTIONS, LLC for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FCCPA)

55. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-one (51) as if fully set forth herein.

56. At all times relevant to this action, Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

57. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

58. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her family.

59. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NAVIENT SOLUTIONS, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from

further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/Shaughn C. Hill
Shaughn C. Hill, Esquire
Florida Bar No.: 105998
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
SHill@ForThePeople.com
KZhang@ForThePeople.com
*Attorney for Plaintiff*